IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Danville Division

| | |
|---|---|
| JIMMY GREY GLASS, ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 4:15-cv-46 |
| v. ) | |
| ) | REPORT AND RECOMMENDATION |
| COMMISSIONER ) | |
| OF SOCIAL SECURITY, ) | By: Joel C. Hoppe |
| Defendant. ) | United States Magistrate Judge |

Plaintiff Jimmy Grey Glass asks this Court to review the Commissioner of Social Security's ("Commissioner") final decision denying his application for supplemental security income ("SSI") under Title XVI of the Social Security Act (the "Act"), 42 U.S.C. §§ 1381–1383f. The case is before me by referral under 28 U.S.C. § 636(b)(1)(B). ECF No. 12. Having considered the administrative record, the parties' briefs, and the applicable law, I find that the Commissioner's decision is not supported by substantial evidence. Therefore, I recommend that the Court **GRANT** Glass's Motion for Summary Judgment, ECF No. 13, **DENY** the Commissioner's Motion for Summary Judgment, ECF No. 15, and **REMAND** the case for further administrative proceedings.

I. Standard of Review

The Social Security Act authorizes this Court to review the Commissioner's final decision that a person is not entitled to disability benefits. *See* 42 U.S.C. § 405(g); *Hines v. Barnhart*, 453 F.3d 559, 561 (4th Cir. 2006). The Court's role, however, is limited—it may not "reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment" for that of agency officials. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012). Instead, the Court asks only whether the Administrative Law Judge ("ALJ") applied the correct legal standards and

1

whether substantial evidence supports the ALJ's factual findings. *Meyer v. Astrue*, 662 F.3d 700, 704 (4th Cir. 2011).

"Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is "more than a mere scintilla" of evidence, *id.*, but not necessarily "a large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). Substantial evidence review takes into account the entire record, and not just the evidence cited by the ALJ. *See Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487–89 (1951); *Gordon v. Schweiker*, 725 F.2d 231, 236 (4th Cir. 1984). Ultimately, this Court must affirm the ALJ's factual findings if "conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)). However, "[a] factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law." *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

A person is "disabled" if he or she is unable to engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. § 416.905(a). Social Security ALJs follow a five-step process to determine whether an applicant is disabled. The ALJ asks, in sequence, whether the applicant (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals an impairment listed in the Act's regulations; (4) can return to his or her past relevant work based on his or her residual functional capacity; and, if not (5) whether he or she can perform other work. *See Heckler v. Campbell*, 461 U.S. 458, 460–62

(1983); 20 C.F.R. § 416.920(a)(4). The applicant bears the burden of proof at steps one through four. *Hancock*, 667 F.3d at 472. At step five, the burden shifts to the agency to prove that the applicant is not disabled. *See id.*

## II. Procedural History

Glass applied for SSI on March 6, 2012, Administrative Record ("R.") 26–34, 84, ECF No. 9, alleging disability caused by high blood pressure, depression, and arthritis, R. 229. He initially alleged a disability onset date of June 1, 2007, R. 26, but later amended it to March 6, 2012, at which time he was fifty-seven years old, R. 12, 51.[1] Disability Determination Services ("DDS"), the state agency, denied his claim at the initial, R. 88–98, and reconsideration stages, R. 120–31. On February 25, 2014, Glass appeared with counsel at an administrative hearing before ALJ R. Neely Owen, at which time the ALJ heard testimony from Glass and a vocational expert ("VE"). R. 35–58.

The ALJ denied Glass's claim in a written decision issued on June 18, 2014. R. 12–21. He found that Glass had severe impairments of hypertension, obesity, and osteoarthritis. R. 15. The ALJ next determined that none of Glass's impairments, alone or in combination, met or medically equaled the severity of a listed impairment. R. 16. As to Glass's residual functional capacity ("RFC"),[2] the ALJ found that he could perform medium work;[3] occasionally kneel, crouch, crawl, and climb ladders, ropes, and scaffolds; and frequently stoop, balance, and climb

---

[1] Glass also filed for disability insurance benefits ("DIB") under Title II of the Act, 42 U.S.C. §§ 401–434. R. 198–99. He withdrew his DIB application after amending his alleged onset date, which fell after his date last insured. R. 12, 51.

[2] A claimant's RFC is the most he can do on a regular and continuing basis despite his impairments. 20 C.F.R. § 416.945(a); SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996).

[3] "Medium" work involves lifting no more than fifty pounds at a time, but frequently lifting objects weighing twenty-five pounds. 20 C.F.R. § 416.967(c).

3

ramps and stairs. R. 16–20. Furthermore, he determined that Glass must avoid even moderate exposure to hazards such as machinery and heights. *Id.* Based on this RFC and the VE's testimony, the ALJ found that Glass could perform his past relevant work as a furniture packer and surveyor helper. R. 20–21. He therefore concluded that Glass was not disabled. R. 21. The Appeals Council denied Glass's request for review, R. 1–4, and this appeal followed.

III. Discussion

Glass challenges the ALJ's finding that he could perform his past work. Pl. Br. 3–4, ECF No. 14. He also challenges the ALJ's RFC determination because the ALJ misread the opinion of the DDS examiner, Josephine Cader, M.D.[4] *Id.* at 4–5. The Commissioner responds that these errors are harmless. I must disagree. As discussed below, the ALJ misunderstood the medical opinion upon which he patterned the hypothetical to the VE and ultimately adopted as the RFC determination. Furthermore, in finding that Glass could return to his past relevant work, the ALJ relied upon a flawed VE opinion about Glass's past work as generally performed, and he did not develop evidence, question the VE, or make any specific findings about Glass's past work as actually performed. Despite the fairly limited medical evidence to support Glass's claimed limitations, the ALJ's errors so permeate his written opinion that I cannot find that the outcome would have been the same without them. *See Kersey v. Astrue*, 614 F. Supp. 679, 696 (W.D. Va. 2009) ("Errors are harmless in social security cases when it is inconceivable that a different administrative conclusion would have been reached absent the error.").

Assessing Glass's RFC in his written opinion, the ALJ reviewed the medical evidence and Glass's report of symptoms and daily activities. R. 16–20. Glass reported that his impairments caused significant restrictions, including that he could lift no more than five pounds,

---

[4] Glass also argues that the ALJ improperly assessed the credibility of his statements regarding his symptoms. Pl. Br. 5–8. I do not reach this argument because other deficiencies in the ALJ's opinion require remand.

4

climb only one flight of stairs, and walk no farther than the mailbox and back. R. 254. Glass said he went outside daily, visited with friends and family, drove and rode in a car, and played a musical instrument once a week. R. 252–53. He experienced pain daily that limited his ability to perform various functions, including squatting, kneeling, bending, stooping, and standing. R. 254, 264–65.

Additionally, although Glass alleged significant symptoms and limitations, his medical record for the relevant period is not extensive. Glass had uncontrolled high blood pressure with typical readings of 216/95, R. 297; 189/83, R. 300; 175/88, R. 331; and 210/96, R. 405, but physicians also noted that he was asymptomatic, R. 297. As to his osteoarthritis, Glass was treated with Tramadol and Lidoderm patches for pain in his knee, shoulder, and hands. R. 406. Findings on physical examinations were largely normal, R. 301, 331, including range of motion and extremity strength, although bilateral crepitus in the knees was noted. R. 317–18. Imaging showed slight narrowing of the medial articular space in both knees and a small amount of spurring from the right patella. R. 314.

The ALJ also discussed the medical opinion evidence. R. 19. He assigned "significant weight" to all of the DDS physicians' opinions that Glass could perform medium work, and he gave Dr. Cader's opinion "slightly more weight" because she added environmental limitations. R. 19. Although the ALJ correctly noted that one DDS physician determined that Glass could perform medium work, R. 95, the ALJ's reading of Dr. Cader's opinion was inaccurate.[5] Dr. Cader did not find that Glass could perform medium work. To be sure, Dr. Cader's opinion reflects lifting restrictions of fifty pounds occasionally and twenty-five pounds frequently, which amounts to medium work. R. 116. Nevertheless, she explained in the narrative section,

---

[5] The Commissioner properly concedes that the ALJ erred in his reading of Dr. Cader's opinion. Def. Br. 10, ECF No. 16.

5

> [a]fter re-examination of [Glass's] evidence and recent 3rd party [activities of daily living] information regarding his alleged functional limitations, examiner feels [Glass] should be reduced to light work. . . . Therefore, the evidence shows [Glass] has the ability to perform light work and return to his past work as a surveyor which is considered to be light work activity.

R. 113. Considering Dr. Cader's narrative statement, it appears that her citation of medium work lifting levels was a typographical error. The ALJ did not mention, much less resolve, the inconsistency in the work levels cited in Dr. Cader's opinion. Moreover, the ALJ's reasons for assigning her opinion significant weight make no sense considering that her opinion was that Glass could do no more than light work, but the ALJ determined that he could perform medium work. The ALJ's "decision 'must be sufficiently specific to make clear to any subsequent reviewers the weight he gave' to the opinion and 'the reasons for that weight.'" *Harder v. Comm'r of Soc. Sec.*, No. 6:12cv69, 2014 WL 534020, at *4 (W.D. Va. Feb. 10, 2014) (citing SSR 96-2p, 1996 WL 274188, at *5 (July 2, 1996)). In the absence of a logical explanation for the weight given to the medical opinions, as is the case here, the Court cannot "undertake meaningful substantial evidence review." *Monroe v. Colvin*, 826 F.3d 176, 191 (4th Cir. 2016).

The ALJ then compounded this error by specifically presenting to the VE a hypothetical based on the errant portion of Dr. Cader's opinion that Glass could do medium work, R. 52–53 (citing R. 116), which of course was not her actual opinion. The VE responded that Glass could perform his past work as surveyor helper and furniture packer, both of which the VE had previously testified involved medium work. R. 52–53. Upon further questioning, the VE testified that adding to the hypothetical a restriction to avoid moderate exposure to machinery, as identified by Dr. Cader and later adopted by the ALJ in Glass's RFC, R. 16, 118, "might temper" Glass's ability to work as a furniture packer because that job involves exposure to conveyors, R. 54–55. In his written opinion, the ALJ did not even mention the VE's testimony apparently

6

limiting, if not precluding, Glass's ability to work as a furniture packer. *See* R. 20–21. Glass challenges the ALJ's finding that he could perform his past work as a furniture packer,[6] and the Commissioner concedes this finding was error. Def. Br. 9. The Commissioner's concession is appropriate, as the limitation in exposure to machinery identified in the RFC would preclude Glass from performing work as a hand packer, which according to the Dictionary of Occupational Titles ("DOT") involves exposure to conveyors. *See* DOT 920.587-018, 1991 WL 687916 (4th ed., rev. 1991). Accordingly, substantial evidence does not support the ALJ's conclusion that Glass could perform his past work as a furniture packer as actually or generally performed.

Glass also argues that the VE's testimony that he could perform his past work as a surveyor helper conflicts with the DOT definition of that job's functions. The ALJ determined that Glass had the RFC to kneel and crouch occasionally, R. 16, and the VE testified that a person with these postural limitations could perform Glass's past work as a surveyor helper, R. 56–57. The DOT, however, defines the job duties of surveyor helper as requiring the ability to kneel and crouch frequently. DOT 869.567-010, 1991 WL 687598 (4th ed., rev. 1991). Thus, the job functions defined in the DOT conflict with the VE's testimony. Where an apparent conflict exists between the DOT definition of a job and the VE's testimony, the ALJ has an independent obligation to inquire into the conflict and resolve it on the record. *Pearson v. Colvin*, 810 F.3d 204, 209–10 (4th Cir. 2015). Neither during the administrative hearing, nor in his written opinion did the ALJ raise or attempt to reconcile this conflict as he is required to do.[7] Thus, he erred in relying on the VE's testimony on this point. Accordingly, I find that substantial evidence does

---

[6] Glass also challenges the ALJ's characterization that his past work was as a furniture packer, and he suggests the job was actually more limited. Pl. Br. 3–4.

[7] The Commissioner did not address this issue in her brief.

7

not support the ALJ's finding that Glass can do his past work as a surveyor helper as it is generally performed.

The Commissioner makes her last stand on the ALJ's finding that Glass can perform his past work as a surveyor helper as actually performed. Def. Br. 10–12. She cites Glass's report that his work as surveyor helper was at the light work level, did not involve crouching, and required kneeling for only thirty minutes per day. *Id.* (citing R. 258). The problem with this argument is that the ALJ did not mention Glass's report. Other than noting that surveyor helper was performed at the medium level, he made no findings about the functions Glass actually performed as a surveyor helper. *See* R. 20. Nor did he elicit any testimony from Glass or the VE on this subject. Thus, the ALJ cited no evidence and offered no explanation for his finding that Glass could perform his past work as a surveyor helper. Although the claimant bears the burden of persuading the Commissioner that he cannot perform his past work "either as [he] actually performed it" or as it is "generally performed in the national economy," *Goodman v. Astrue*, 539 F. Supp. 2d 849, 850 (W.D. Va. 2008) (citing 20 C.F.R. § 416.960(b)), the ALJ must make findings as to the physical and mental demands of the claimant's past work and discuss whether the person's RFC would permit him to return to the past job or occupation, *Prim v. Astrue*, No. 7:07cv213, 2008 WL 444537, at *6 (W.D. Va. Feb. 13, 2008); SSR 82-62, 1982 WL 31386, at *3 (Jan. 1, 1982) ("[W]hether the claimant retains the functional capacity to perform past work . . . must be developed and explained fully in the disability decision."). Without any discussion on these points or any explanation for his findings, the ALJ's step four determination defies review. *See Goodman*, 539 F. Supp. 2d at 852. Accordingly, I find that the ALJ's determination that Glass can do his past work as surveyor helper as actually performed is not supported by substantial evidence.

8

## IV. Conclusion

For the foregoing reasons, I find that substantial evidence does not support the Commissioner's final decision. Accordingly, I respectfully recommend that the presiding District Judge **GRANT** Glass's Motion for Summary Judgment, ECF No. 13, **DENY** the Commissioner's Motion for Summary Judgment, ECF No. 15, **REMAND** this case for further administrative proceedings, and **DISMISS** the case from the docket.

### Notice to Parties

Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636(b)(1)(C):

Within fourteen days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to file timely written objections to these proposed findings and recommendations within 14 days could waive appellate review. At the conclusion of the 14 day period, the Clerk is directed to transmit the record in this matter to the Honorable Jackson L. Kiser, Senior United States District Judge.

The Clerk shall send certified copies of this Report and Recommendation to all counsel of record.

ENTER: February 15, 2017

Joel C. Hoppe
United States Magistrate Judge

9